Sebree v. Patterson.

SEBREE *et al.*, *Appellants*, v. PATTERSON *et al.*

1. **Statute of Limitations**: EQUITABLE DEFENCE. In ejectment, evidence of an equitable defence, no affirmative relief being asked, is not excluded by the statute of limitations, for the reason that the transaction to which it relates occurred more than ten years, or other statutory period, prior to the institution of the suit.

2. —— : ——. The office and purpose of such statute is to bar actions and not to defeat mere matters of defence.

3. **Practice in Supreme Court.** Where the finding of the lower court is manifestly right for the defendant, upon an equitable estoppel pleaded by him, the judgment will not be reversed because of the admission of improper evidence.

4. ——. It will be presumed, in the absence of anything to the contrary in the record, that the trial court placed its finding on the correct ground.

*Appeal from Daviess Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

AFFIRMED.

*Rush & Alexander* for appellants.

(1) A tax deed which simply recites that notice of sale was given according to law, without reciting the manner of notice, is void. *Abbott v. Lindenbower*, 42 Mo. 162; *Lagroue v. Raines*, 48 Mo. 536; *Spurlock v. Allen*, 49 Mo. 178; *Abbott v. Doling*, 49 Mo. 302; *Large v. Fisher*, 49 Mo. 307; *Hubbard v. Gilpin*, 57 Mo. 441. The tax deed from the collector to Smoot also recites that the judgment was against the land assessed to James E. Baldwin, who was not the apparent or real owner, and for this reason the deed is void. *Abbott v. Lindenbower*, 42 Mo. 162; *Hubbard v. Gilpin*, 57 Mo. 441. There are other objections to this deed, but these are sufficient. (2) Defendant's second defence, that the land in controversy was omitted from the conveyance of 1842 by the mistake of the scrivener, is barred by the

statute of limitations interposed by plaintiffs. R. S., 1879, p. 543, sec. 3219. The statute referred to applies to all actions, whether they are such as have heretofore been denominated legal, or equitable. *Rogers v. Brown*, 61 Mo. 187; *Wells v. Perry*, 62 Mo. 573. And no improper act of the plaintiffs, or their ancestor, having prevented the bringing of an action to correct the deed of 1842, or for title, the action should have been begun within ten years. *Bobb v. Woodward*, 50 Mo. 103; *Hunter v. Hunter*, 50 Mo. 445. Bouldin's cause of action to reform the deed of 1842 accrued on the delivery of the deed, and the statute of limitations began to run from that time. *Parker v. Kane*, 4 Wis. 1. (3) Murray should not have been permitted to testify. Sanders, the other party to the cause of action in issue and on trial, was dead, and Murray was thereby rendered incompetent. R. S., 1879, sec. 4010; *Poe v. Domic*, 54 Mo. 119; *Stanton v. Ryan*, 41 Mo. 510; *Looker v. Davis*, 47 Mo. 140; *Martin v. Jones*, 59 Mo. 181; *Angell v. Hester*, 64 Mo. 152; *Ring v. Jameson*, 66 Mo. 424; *Bradley v. West*, 68 Mo. 69; *Wood v. Mathews*, 73 Mo. 447; *Parks v. Caudle*, 58 Texas, 216; *Ewing v. Ewing*, 96 Pa. St. 381; *Bill v. Stall*, 55 Wis. 216; *Hilton v. Newman*, 6 Mo. App. 304.

*H. C. McDougal* for respondents.

(1) The statute of limitations does not apply to the equitable defence set up in defendant's answer. *Michel v. Tinsley*, 69 Mo. 442. (2) Even conceding that the court erred in admitting in evidence the tax deed to Smoot, and also in admitting the parol evidence of Murray in support of the estoppel pleaded in the answer, yet if the judgment must have been for the defendants on the pleadings and proof, the error was harmless and the court will not reverse therefor. *Hahn v. Sweazea*, 29 Mo. 199 ; *Carson v. Cummings*, 69

Mo. 325. (2) The land having been sold in 1866, under the law then in force, the tax sale and deed were sufficient, *prima facie*, to convey to and vest in Smoot the title. The only objection was and is that the tax deed is void on its face. Appellants offered no evidence to rebut the *prima facie* of this deed, and no objection can now be heard. *Abbott v. Lindenbower*, 46 Mo. 291 ; *DeTreville v. Smalls*, 98 U. S. 517 ; *Keely v. Sanders*, 99 U. S. 441 ; *Gwinne v. Neinswanger*, 18 Ohio, 400 ; *Tharp v. Hart*, 2 Sneed, 569. (3) Defendant, Murray, was a competent witness. It may be considered settled that, although one of the original parties to the contract or cause of action is dead, the other party thereto is a competent witness, in his own favor, as to all transactions had with others, to which deceased was not a party, and of which he knew nothing ; and is also competent as to all facts and transactions that have taken place since the death of such other party. *Looker v. Davis*, 47 Mo. 140 ; *Poe v. Domic*, 54 Mo. 119, 124 ; *Wheeler v. Arnold*, 30 Mich. 304, 307 ; *Martin v. Jones*, 59 Mo. 181, 187 ; *Campbell v. Mayes*, 38 Iowa, 9 ; *Redman v. Redman*, 70 N. C. 257 ; *McKean v. Massey*, 9 Kan. 600 ; *McFarren v. Mont. Alto Co.*, 76 Pa. St. 180 ; *Simmons v. Sisson*, 26 N. Y. 264, 276.

RAY, J.—This was an action of ejectment, in the Daviess circuit court, for the undivided one-half of the east half of the northeast quarter of section nineteen, township fifty-nine, range twenty-six, in said county. The petition is in the usual form, and was filed April 7, 1881, by Robert H. N. Sanders, as plaintiff, and against said Patterson, as defendant. At the ensuing June term of said court, Levi Murray and Sidney Shackelford, on their motion, were made parties defendant, and the cause ordered to proceed against all three.

In January, afterwards, the defendants filed their answer, which is to the effect following : (1) A general

denial; (2) an equitable title in defendant, Patterson, to the land in controversy; and then set up as a *defence* to said action, in the language following: "Defendants further answer, and for further defence state, that plaintiff ought not to be permitted to say that, on the eleventh day of March, 1881, he was entitled to the possession of the premises sued for, and that the defendant, Patterson, entered into said premises and unlawfully withholds from the plaintiff the possession thereof, to his damage, etc., because these defendants say that, in the year 1839, the land described in the petition was entered by the plaintiff and one James E. Bouldin, and that they, at about the same time, entered a large amount of other lands, in various parts of this state, all of which were paid for with the money of said Bouldin; that long after the entry of said land, to-wit, in the years A. D., 1841 and 1842, the plaintiff sold all his interest in all of said lands to said James E. Bouldin; that, by mistake of the scrivener, the numbers of said lands in controversy were omitted from said deeds then made by plaintiff to said Bouldin for his interest in all of said lands, and that it was then and there intended, by both the plaintiff and said Bouldin, that the deeds then made should convey to said Bouldin all his interest in all of the lands so entered by and in the name of both plaintiff and said Bouldin; that, thereafter, to-wit, on the thirteenth day of October, 1869, said Bouldin sold and conveyed the lands in controversy, with other lands, to the defendant, Shackelford; that, on the twentieth day of December, 1872, said Shackelford sold and conveyed, by general warranty deed, the lands in controversy to defendant, Levi Murray, who, thereafter, and long prior to the fourth day of March, 1877, sold and conveyed the same, by general warranty deed, to the defendant, Patterson; * * * that the defendant, Patterson, is in the lawful possession of the land described in plaintiff's petition, claiming the fee-simple title

thereto, under good and sufficient deeds of conveyance thereof."

The answer further contained a certain "matter in estoppel," growing out of a conversation between the original plaintiff, Sanders, and the defendant, Murray, just prior to the purchase, by the latter, from defendant, Shackelford, of the land in controversy, in which Sanders disclaimed all right or title to the land in controversy, and upon the faith of which that purchase, and the subsequent sale to defendant, Patterson, were made. The answer also set up the ten-year statute of limitations.

After the filing of said answer, the death of Sanders, the original plaintiff, was suggested, and the cause revived in the name of Mary V. Sebree, and her husband, Urial Sebree, and Jennie Brown, and her husband, Geo. E. Brown, who, thereafter, filed their reply to said answer, consisting of three branches: the first of which is a special denial of the new matter set up in the second branch of the answer; the second is in the nature of the twenty-year statute of limitations, and is in the following language: "Plaintiffs, by way of further reply, say that defendants ought not to be permitted to say that, in the year 1841, or 1842, or at any other time prior thereto, plaintiffs' ancestor, the said Robert H. N. Sanders, sold all his interest in said real estate to said Bouldin, or that, by mistake of the scrivener, the numbers of the land were omitted from the deeds mentioned in defendants' answer then made by said Sanders to said Bouldin, or that it was then and there intended by said Sanders and Bouldin to convey all the interest of said Sanders in said real estate, for that plaintiffs say that defendants' and their grantor's, James E. Bouldin's, cause of action, if any they had on that behalf, accrued more than twenty years prior to the beginning of this suit, and plaintiffs plead said limitation in bar of defendants' said defence to plaintiffs' cause of action";

and, third, a general denial of all new matter set up in the answer.

The cause was submitted to the court upon the pleadings and the evidence. No instructions were asked or given. The court found the issues for the defendants, and thereupon adjudged they go hence, without day, and recover of the plaintiffs their costs, in this behalf expended, and that they have hereof execution. From this judgment, the plaintiffs, after an unsuccessful motion for a new trial, appealed to this court.

At the trial, it was admitted that Sanders, the original plaintiff, had died intestate ; that the present plaintiffs are his sole heirs at law ; that defendant, Patterson, was in possession of the land in controversy at the time of the institution of the suit, holding the same adversely to the plaintiff, under claim and color of title ; that said land was unimproved wild land, not fenced or occupied by any one, until 1873, some eight years before the commencement of this suit. It was also admitted that the land in controversy was originally entered in 1839, in the joint names of said Sanders and Bouldin, and that, afterwards, in 1843, a patent, in due form, was issued thereon, conveying the premises, jointly, to said Sanders and Bouldin, which plaintiffs read in evidence on their behalf.

The defendants, to sustain the issues on their part, thereupon offered and read in evidence a deed for said east half of the northeast quarter of section 19, township 59, range 26 (embracing the land in suit), from said Bouldin to said Shackelford, dated October 9, 1869 ; a like deed from said Shackelford to said Murray, dated the twentieth of December, 1872 ; and, also, a similar deed from said Murray to defendant, Patterson, dated March 11, 1877. The defendants, also, offered to read in evidence, over the objection of plaintiffs, a "tax deed" for said land, from the collector to Daniel Smoot, bearing date December 7, 1866, and, in

connection therewith, a quit-claim from said Smoot to said Shackelford, to the admission of which plaintiffs objected, for the reason that said deed was void on its face. Defendants, also, over plaintiffs' objection, offered defendant, Murray, as a witness to prove the estoppel pleaded in the answer, to whose competency as a witness the plaintiffs objected, for the reason that the original plaintiff, Sanders, being a party to said estoppel, and being then dead, said Murray, the other party thereto, was, by statute, disqualified as a witness in reference thereto.

The defendants, also, offered in evidence four deeds from said Sanders to said Bouldin, one dated in 1839, two in 1841, and one in 1842, conveying a great many tracts of land, in various parts of the state, that had been entered in their joint names ; and, in connection with these deeds, and especially the last, the record further shows that defendants, by agreement, offered and read in evidence certain depositions of several witnesses, Ballew, Hayden, Lewis, and Walden, taken in 1857, in the case of *Bouldin v. Sanders*, then pending in the St. Clair circuit court, of which depositions it is, for the present, sufficient to say that they tend to prove, in the amplest manner, the matters and things set up in the said second branch of defendants' said answer, and which will be further noticed in the progress of this opinion.

Upon this state of the record, the appellants, for a reversal of the judgment of the trial court, here make and rely upon three points, which are pressed upon our attention. The first point so made, which we shall notice, is, we think, the controlling question in the case, and is to the effect following, that is to say, it is insisted, on behalf of plaintiffs, that the matters and things set up in the second branch of defendants' answer, are barred by the twenty-year statute of limitations, mentioned in the second branch of plaintiffs' reply. Of

this point it is, perhaps, sufficient to say it is founded, we think, in a misconception of the character and nature of the matters and things so set up in that branch of the answer; and, also, in a misapprehension of the office and purpose of the statute of limitations. The matters and things so set up constitute, if true, a perfect equitable defence to plaintiffs' cause of action, and nothing more. That part of the answer, properly understood, neither set up, nor attempted to set up, a cause of action. No affirmative belief, general or special, is asked or claimed, nor was any given. Pomeroy on Rem., secs. 593, 748.

The plaintiffs' counsel, we respectfully suggest, is clearly mistaken in his estimate and view of the matters so pleaded. In no just sense is it a " cause of action," as supposed and treated in the second branch of plaintiffs' reply, nor is it so pleaded. The office and purpose of the statute, by its very terms, is to bar " actions," and not to suppress or exclude mere matters of defence. Its policy generally is to quiet stale and vexatious suits, not to stifle just and meritorious defences. In some cases, however, especially when applied to real estate, it has the effect not only to bar a suit, but also to confer title. But this does not affect the general policy of the statute above quoted. It is, perhaps, necessary to say that it has been frequently held, and is the settled law in this state, that an equitable title well plead is a good defence to an action of ejectment, based on the legal or paper title. *Tibeau v. Tibeau,* 19 Mo. 78; *Carman v. Johnson,* 20 Mo. 108; *Hayden v. Stewart,* 27 Mo. 286; *Harris v. Vinyard,* 42 Mo. 568; *Johnson v. Houston,* 47 Mo. 227; *Ells v. Railroad,* 51 Mo. 200; *Barker v. Circle,* 60 Mo. 258; *Collins v. Rogers,* 63 Mo. 515.

If the depositions of witnesses, offered in evidence by defendants, in connection with the other evidence in the cause, was sufficient to satisfy the chancellor, or the court, of the substantial truth of the matters so set up

in said answer, of which there can be no doubt, then it was his plain duty to find as he did, and, having so found, that, of itself, independent of the tax deed, and the testimony of Murray, authorized and required the rendition of the judgment so entered up in that behalf. Under such circumstances, the tax title offered in evidence, and the estoppel so pleaded in that behalf, become unimportant, and cut no figure in the case. For the purposes of this case, it may be conceded that the tax deed was void on its face, and that Murray was an incompetent witness to prove said estoppel, still the finding of the court, upon the whole record, was manifestly for the right party, and the judgment, under such circumstances, ought not, and will not, be disturbed. Under the evidence as to the equitable defence set up in the answer, the court, or chancellor, could not well have found otherwise than for the defendants, and, in the absence of anything to the contrary, it will be presumed that the court, or chancellor, placed his finding and judgment on the correct ground.

Finding no error in the record, the judgment is affirmed, in which all concur.