### In re Stephen W. COLBERT and Dorothy S. Colbert, Debtors.

### Susan L. Rhiel, Chapter 7 Trustee, Plaintiff,

### v.

### Chase Home Finance, LLC, Defendant.

**Bankruptcy No. 09–59313.
Adversary No. 09–2442.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

July 29, 2010.

Susan L. Rhiel, Treisa Martin, Columbus, OH, for Plaintiff.

Amelia A. Bower, Columbus, OH, Stephen Franks, Reimer, Lorber & Arnovitz, Twinsburg, OH, for Defendant.

### MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

In this adversary proceeding, the Chapter 7 trustee of the estate of each debtor ("Trustee") seeks a declaratory judgment that a mortgage ("Mortgage") held by Chase Home Finance, LLC ("Chase") on

real property located at 1025 Doherty Road, Galloway, Ohio 43119 ("Property") extends only to Dorothy Colbert's interest in the Property, not to the interest of her husband and joint debtor, Stephen Colbert. *See* Amended Complaint to Determine Validity and Priority of Liens ("Amended Complaint") (Doc. 6). For the reasons stated below, the Court concludes that summary judgment is not appropriate here.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

## III. Background

The certificate of acknowledgment on the Mortgage ("Certificate") provides:

**State of Ohio,** *Franklin* **County ss:**

This instrument was acknowledged before me this *8* day of *September 2003* by *Stephen W. Colbert, releasing all rights of dower herein and Dorothy Colbert [a/k/a] Dorothy S Colbert, a married couple*

    *Christopher J. Wilson*

    Notary Public

The text reproduced above in italics was set forth in legible handwriting; the remaining text was printed in one or more typefaces. On August 14, 2009, the Debtors filed a voluntary Chapter 7 petition.

## IV. Arguments of the Parties

In support of her request for summary judgment on this cause of action, the trustee relies on two aspects of the refinancing transaction that gave rise to the Mortgage: (1) only Mrs. Colbert, not Mr. Colbert, signed the promissory note secured by the Mortgage ("Note"); and (2) the Certificate states that Mr. Colbert was releasing dower. *See* Trustee's Motion for Summary Judgment ("Motion") (Doc. 9) at 6 & n. 3; Trustee's Reply Memorandum in Support of Motion for Summary Judgment at 5 ("Reply") (Doc. 14). In its response ("Response") (Doc. 13), Chase contends that the reference to dower in the certificate of acknowledgment is surplusage because nothing in the Mortgage itself suggests that Mr. Colbert was signing solely to release dower. *See* Response at 4. Chase does not address Mr. Colbert's non-execution of the Note.

## V. Legal Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak,* 503 F.3d at 577; *Skowronek v. Am. S.S. Co.,* 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.,* 973

F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Novak*, 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins)*, 292 B.R. 842, 845 (Bankr.S.D.Ohio 2003).

## B. Mr. Colbert's Non-execution of the Note

■ The Trustee's argument that she is entitled to summary judgment because Mr. Colbert did not sign the Note, purportedly rendering unenforceable any attempted mortgage of his one-half interest in the Property due to lack of consideration, is both (1) contrary to Ohio law [1] and (2) unsupported by the summary-judgment record.

### 1. Applicable Ohio Law

■ The Ohio Supreme Court has held that one person may grant a mortgage on his or her property to secure another's debt, the result being that the mortgagor's property and the secured obligation have a "relation of suretyship." *People's Ins. Co. v. McDonnell*, 41 Ohio St. 650, 659 (Ohio 1885). *See also Robinson v. Boyd*, 60 Ohio St. 57, 53 N.E. 494, 494 (syllabus ¶ 2) (Ohio 1899) ("Detriment or loss to a promisee being a sufficient con-

sideration to support a promise, therefore, where property is pledged by one for the debt of another, the fact that the creditor, by reason of the pledge, may have been induced to forego efforts to obtain other security from his debtor, is a sufficient consideration to support the pledge."); Restatement (Third) of Property § 1.3 (2010) (citing cases for the proposition that "[a]n obligation whose performance is secured by a mortgage may be that of the mortgagor or of some other person"). Thus, Ohio appellate courts consistently have held that "a mortgage given to secure the obligation of a third person is valid and enforceable, and creates a surety relationship between the mortgagor and mortgagee." *Cranberry Fin., L.L.C. v. S & V P'ship*, 186 Ohio App.3d 275, 927 N.E.2d 623, 627 (2010) (internal quotation marks omitted); *see also Liberty Sav. Bank, F.S.B. v. Sortman*, 1998 WL 184483 at *4 (Ohio Ct.App. Apr.17, 1998) ("[I]n conveying a mortgage ... to secure payment of the debt represented by the notes [on which they were not personally liable, the mortgagors] effectively obligated themselves to pay the amounts due under the notes in the event of a default, or risk foreclosure of the mortgaged property."). The trustee contends that a mortgage is unenforceable due to a lack of consideration when the mortgagor is not liable on the associated promissory note. To the contrary, under the case law discussed above, a mortgagor who is not liable on the promissory note enters into a surety relationship with the mortgagee, and other case law holds that "'[t]he consideration running from the

---

**1.** Ohio law controls because: (1) where, as here, the Bankruptcy Code "does not specifically address an issue that arises in bankruptcy, the bankruptcy court looks to state law, to the extent that it does not conflict with the [B]ankruptcy [C]ode[,]" *Reinhardt v. Vanderbilt Mortgage & Fin., Inc. (In re Reinhardt)*, 563 F.3d 558, 563 (6th Cir.2009) (internal

quotation marks omitted); and (2) the Mortgage is on real property located in Ohio. *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1024 (6th Cir.2001) ("Since this mortgage concerns real property located in Ohio, this inquiry is governed by Ohio law.").

creditor to the debtor is deemed sufficient to support the surety's promise to make the debt good.'" *Solon Family Physicians, Inc. v. Buckles,* 96 Ohio App.3d 460, 645 N.E.2d 150, 152 (1994) (quoting *United States v. Tilleraas,* 709 F.2d 1088, 1091 (6th Cir.1983)). In other words, "[t]he obligation of the surety rests upon a consideration as adequate as that of the principal; for, though he receive no pecuniary or other benefit for his undertaking, credit is extended to the principal, and advantages are obtained by him, upon the faith of the surety's engagement." *Neininger v. State,* 50 Ohio St. 394, 34 N.E. 633, 635 (1893). "This proposition has been the law of [Ohio] for over a century." *Medina Supply Co. v. Corrado,* 116 Ohio App.3d 847, 689 N.E.2d 600, 605 (1996).

In light of the case law discussed above, it is unsurprising that, as far the Court is aware, Chapter 7 trustees historically have not challenged mortgages for lack of consideration merely because a mortgagor failed to sign the associated promissory note.[2] The Court suspects that the genesis of what appears to be a recent development in this District of certain trustees challenging such mortgages is *Wells Fargo Bank, N.A. v. Nelson,* 2009 WL 1651533 (S.D.Ohio June 10, 2009), the sole decision on which the trustee relies for her argument in this regard. The Trustee's reliance on this unreported decision to challenge—based on lack of consideration—a mortgage granted by a spouse who did not sign the promissory note is misplaced. In *Nelson,* the debtor, who co-owned mortgaged property with her non-debtor husband, signed the mortgage as a "Non-

borrower," and the mortgage itself stated that she was signing to release dower; the district court, therefore, affirming the bankruptcy court's decision, rightly held that the debtor had not granted a mortgage on her undivided one-half interest in the property. Having decided that issue, the court then stated that "it is clear that [the debtor] is not obligated on the Note and therefore, that there is no consideration to support the mortgage as to her one-half interest in the property." *Nelson,* 2009 WL 1651533 at *4. The district court, however, cited no authority for this statement and did not address the Ohio case law discussed above, under which mortgages given to secure the debts of another can be enforceable. Thus, contrary to the Trustee's suggestion, *Nelson* does not require the Court to grant the Motion and determine as a matter of law that the Mortgage is invalid. *Nelson* does not compel this result because the statement in *Nelson* on which the trustee relies is: (1) dictum, given the district court's prior holding that the debtor had not granted a mortgage on her one-half interest, *see United States v. Del Percio,* 870 F.2d 1090, 1098 n. 1 (6th Cir.1989) ("Since discussion of these issues was not necessary to the district court's resolution of this case, we believe that the relevant portions of the district court's opinion constitute obiter dicta."); and (2) contrary to the decisions of the Ohio Supreme Court discussed above. *See Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1042 (6th Cir.1992) ("[T]he district court's reliance on federal cases interpreting Ohio law is only correct

---

**2.** The Amended Complaint deleted the fraudulent transfer cause of action asserted in the original complaint. Thus, the Court's ruling does not reach the issue of whether a mortgagor who does not sign the associated promissory note receives reasonably equivalent value for purposes of a fraudulent transfer cause of action. The Court, however, does note in passing that "[i]t is well settled that a debtor need not benefit directly in order to receive reasonably equivalent value for a transfer [but] may benefit indirectly through benefit to a third person." *Johnson v. First Nat'l Bank,* 81 B.R. 87, 88 (Bankr.N.D.Fla.1987).

if those cases accurately reflect the law of Ohio.").

### 2. The Evidentiary Record

■ In light of the controlling Ohio case law discussed above, which removes Mr. Colbert's non-execution of the Note as an impediment to the validity of the Mortgage, there is no evidence in the summary-judgment record supporting the Trustee's allegation that "Stephen Colbert received no proceeds from the loan evidenced by the Note, received no consideration in this transaction and, as such, never transferred a binding mortgage to Chase." Reply at 5. The evidence adduced at trial conceivably could demonstrate otherwise. For example, because this was a refinancing transaction, the evidence might show that the loan proceeds were used to pay off a loan on which Mr. Colbert was personally liable or were used to refinance a loan on the marital residence in which Mr. Colbert not only has an ownership interest but also in which he continues to live. On the other hand, if this turns out to be a truly unusual case, it is possible that the evidence adduced at trial could lead to a finding that there was no consideration to support Mr. Colbert's or Mrs. Colbert's grant of a mortgage in this particular circumstance. The Court, therefore, will reserve until after trial a ruling on the issue of whether the Mortgage extends to Mr. Colbert's interest in the Property despite the fact that he did not sign the Note.

### C. The Reference to Dower in the Certificate of Acknowledgment

■ Next, the Court addresses the Trustee's argument that the Mortgage does not extend to Mr. Colbert's one-half interest in the Property because the certificate of acknowledgment states that Mr. Colbert was releasing dower. In a case that, like this one, involved an alleged dis-crepancy between a mortgage and the accompanying certificate of acknowledgment, the Ohio Supreme Court recognized the "well-settled principle, applicable to the construction of deeds and other instruments, that all their parts are to be construed together, and the meaning ascertained from a consideration of each and every part. . . ." *Dodd v. Bartholomew,* 44 Ohio St. 171, 5 N.E. 866, 867 (1886). In deciding the Motion, therefore, the Court must construe the Mortgage and the certificate of acknowledgment together.

■ By the Mortgage, the "Borrower"—the Colberts collectively—did "mortgage, grant and convey . . . [the Property]." Mortgage at 3. Under the terms of the Mortgage, Mr. Colbert, a Borrower who did not execute the Note (*i.e.,* a cosigner of the Mortgage), signed the Mortgage "to mortgage, grant and convey the co-signer's interest in the Property" without becoming personally obligated to pay the Note. Mortgage § 13. There are no provisos attached to the signature block of either Borrower (*e.g.,* "signing solely to release dower"), nor are there any other provisions in the Mortgage intimating that Mr. Colbert was granting a mortgage on less than his entire interest in the Property. In Ohio, "every . . . mortgage of lands, tenements, or hereditaments shall convey or mortgage the entire interest which the grantor could lawfully grant, convey, or mortgage, unless it clearly appears by the . . . mortgage . . . that the grantor intended to convey or mortgage a less estate." Ohio Rev.Code Ann. § 5301.02 (West 2010). The Mortgage itself, therefore, unambiguously provides that Mr. Colbert granted a mortgage on his entire interest in the Property. *See SFJV 2005, LLC v. Ream,* 187 Ohio App.3d 715, 933 N.E.2d 819, 825 (Ohio Ct.App.2010) ("[P]aragraph 12 of the mortgage makes clear that a 'Borrower' who signs the mortgage instru-

ment, but does not execute the note, mortgages his interest in the property without assuming liability for repayment of the debt; Paul signed as a 'Borrower.' There is no mention in the mortgage about the release of dower rights, nor is there any provision that suggests that Paul Ream signed the mortgage for a purpose other than to mortgage his interest in this property.").

The certificate of acknowledgment likewise begins in an unambiguous manner with the statement that the Mortgage was "acknowledged before me ..." Under § 147.541 of the Ohio Revised Code, this phrase, when used by a notary public in a certificate of acknowledgment, means that: "(A) [t]he person acknowledging appeared before the [notary public]; (B) [the person appearing] acknowledged he executed the instrument; (C) [i]n the case of: (1) A natural person, *he executed the instrument for the purposes therein stated;* ... [and] ... (D) [the notary public] either knew or had satisfactory evidence that the person acknowledging was the person named in the instrument or certificate." Ohio Rev. Code Ann. § 147.541 (West 2010) (emphasis added). As discussed above, the Mortgage itself suggests that Mr. Colbert's stated purpose for his execution of the Mortgage was to grant a lien on his entire interest in the Property, including any ownership interest and any dower interest. Thus, in light of the language of Ohio Revised Code § 147.541 emphasized above, the notary public's use of the phrase "acknowledged before me" means that the notary public certified that Mr. Colbert executed the Mortgage for the purpose of granting a mortgage on his entire interest in the Property, whatever that interest was at the time. *Cf. Crismond v. Kendrick*, 325 Mo. 619, 29 S.W.2d 1100, 1104 (1930) ("[A]ppellants [point out] that the acknowledgment of Elizabeth Bowling to her deed ... is insufficient [because] the certificate of acknowledgment merely recites that she relinquished her dower. It does more. It recites, among other things, as required by the statute then in force, that 'the said Elizabeth Bowling being by me made acquainted with the contents of said deed, acknowledged ... that she *executed the same* and relinquished her dower[.]' ").

Pointing out that the notary public referenced "Stephen W. Colbert, releasing all rights of dower herein" in the certificate of acknowledgment, the trustee concludes that Mr. Colbert only released his dower rights. This does not necessarily follow. First, as discussed above, the Mortgage itself does not contain anything that would limit the effect of Mr. Colbert's signature on the Mortgage. Second, the certificate of acknowledgment does not state that Mr. Colbert was signing only to release dower; rather, the certificate states that he was releasing dower, but does not contain a limiting modifier such as "only" or "solely." Thus, the presence of the dower-releasing language in the certificate of acknowledgment arguably does not limit the effect of the Mortgage itself (*i.e.*, that Mr. Colbert granted a lien on his entire interest in the Property). *Cf. Burnside v. Mealer*, 80 S.W. 785, 786 (Ky.1904) ("The mortgage executed by Mealer and wife purports to convey the entire tract, including all interests they had in it. The clerk's certificate shows they signed and acknowledged the instrument as their act and deed. The fact that he adds to the certificate the words, 'Homestead and dower being relinquished by E.J. Mealer,' subtracts nothing from the effect of the mortgage, which passed the entire title, and which they acknowledged and delivered as their act and deed."). *See also Cazort & McGehee Co. v. Dunbar*, 91 Ark. 400, 121 S.W. 270, 273 (1909) ("It is also urged by defendant that ... Ella Sharp ... did not

convey the land in question as her separate property; but only released and conveyed dower and homestead rights. We do not think that there is any merit in this contention ... It appears from these instruments that Ella Sharp did join in the granting clause of the mortgage; and also that the following clause is in the mortgage: 'And I, Ella R. Sharp, wife of the said John Sharp, for the consideration aforesaid and hereinafter set out, do hereby convey and release ... all my estate, title and interest, and all my rights of dower and of homestead in and to said lands.' The acknowledgment states: 'And on the same day also voluntarily appeared before me the said Ella Sharp ... and ... declared that she had ... executed the foregoing deed and executed, signed and sealed the relinquishment of dower and of homestead therein expressed, for the consideration and purposes therein mentioned and set forth....' ''). For all of the reasons discussed above, the Court cannot grant summary judgment in favor of the Trustee.

### D. The Court Cannot Grant Summary Judgment in Favor of Chase.

The Court, however, cannot render summary judgment in favor of Chase. Chase contends that the reference to dower in the certificate of acknowledgment was surplusage. Although the reference to dower could be construed as surplusage if Mr. Colbert held title to the Property at the time he signed the Mortgage, *see Barker v.*

*Circle,* 60 Mo. 258, 1875 WL 7773 at *3 (1875) ("A single acknowledgment, like the one under consideration, will suffice; the clause relinquishing her dower will be held applicable to all lands in which she had dower, and surplusage, as to all lands owned by her in fee."),[3] the question remains as to why the notary public would add such surplusage after Mr. Colbert's name but not Mrs. Colbert's. Recent decisions rendered by courts in Ohio have involved mortgages in which one party unambiguously signs only to release dower: (1) two titleholders sign a mortgage as borrowers, but one of them signs with the proviso that he or she is signing solely to release dower rights, *see Menninger v. Accredited Home Lenders (In re Morgeson),* 371 B.R. 798, 800 (6th Cir. BAP 2007);[4] *Bostic v. Nat'l City Bank (In re DeRee),* 403 B.R. 514, 520 (Bankr.S.D.Ohio 2009); or (2) two titleholders sign a mortgage, but the mortgage identifies one of them as a "Non–Borrower" and states that the Non–Borrower is signing to release dower. *See Nelson,* 2009 WL 1651533 at *1. Yet the Court had to look outside of Ohio, outside of the bankruptcy context and far back in time (to the Arkansas, Kentucky and Missouri state-court decisions discussed above) in order to find any case in which married co-owners of property signed mortgages granting liens on their entire interests, while the certificate of acknowledgment referenced dower. This suggests that notaries public rarely produce certificates like the one at issue in

---

**3.** The certificate of acknowledgment at issue in *Barker* stated in pertinent part as follows: "Samuel Barker and Martha A. Barker ... this day appeared before me and acknowledged that they executed and delivered the [foregoing instrument], as their voluntary act and deed, for the uses and purposes therein contained. And the said Martha A. Barker ... acknowledged ... that she executed the same, and relinquishes her dower in the real

estate...." *Barker,* 60 Mo. 258, 1875 WL 7773 at *3.

**4.** In *Morgeson,* the BAP held that the debtor had signed the mortgage only to release her dower interest because "both the signature page and the notary page of the mortgage document stated that [the debtor] was signing only to release her dower interest...." *Morgeson,* 371 B.R. at 804. That is not the case here.

this adversary proceeding and raises the question of why the notary public did so here. The Court will not speculate as to the answer. Given the question, however, the Court is unwilling to grant summary judgment in favor of Chase. Moreover, the trustee alleges that the debtors (including Mr. Colbert) held title on the date they commenced their Chapter 7 case and on the date that the debtors acquired the Property in 1996, *see* Amended Complaint ¶ 7, but does not specifically allege that Mr. Colbert held title at the time he signed the Mortgage, and there is no evidence in the summary-judgment record that he did.

## VI. Conclusion

Based on the record as it currently exists, the Court cannot determine whether Mr. Colbert intended to grant a mortgage on his entire interest in the Property, nor can it determine what that interest was at the time he signed the Mortgage. In addition, the Court cannot determine whether consideration supported Mr. Colbert's grant of a mortgage. "A court should not grant a summary judgment until the facts have been sufficiently developed to enable it to decide with reasonable certainty that it is making a correct determination of the law." *Local Union No. 1423, Glaziers v. P.P.G. Indus., Inc.*, 378 F.Supp. 991, 1000 (N.D.Ind.1974). Here, there are too many unanswered questions for the Court to render summary judgment. For the foregoing reasons, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**